UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RITTENHOUSE, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:06CV00545 (JR) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26(c), the defendants move the Court for entry of a protective order prohibiting plaintiff from taking the depositions of local government officials[1] who are responsible for adjudicating and deciding the underlying Capital Improvement Petition, which has been stayed pursuant a consent motion of litigating parties. As grounds, the defendants submit that the deposition of such officials could easily run afoul of local law and rules that prohibit such officials from participating in *ex parte* communications with an opposing party while a matter is pending, and because such depositions will likely substantially intrude on deliberative-process and/or judicially privileged information.

Pursuant to LCvR 7(m), the undersigned hereby certifies that he has sought the consent

---

[1] Plaintiff has provided notice that its wishes to depose District of Columbia government officials: Ruth R. Banks (Chairperson, D.C. Rental Housing Commission), Ronald A. Young (Commissioner, D.C. Rental Housing Commission), Jennifer M. Long (former Commissioner, D.C. Rental Housing Commission), Keith Anderson (Acting Rent Administrator of the District of Columbia), Carl Bradford, (Hearing Examiner) and James Aldridge (former Rent Administrator), as well as former government officials Raenelle Zapata (former Rent Administrator), and Christina Northern (former Rent Administrator).

of opposing counsel for the relief sought in this motion and plaintiff would only consent to a limited protective order that restricts questioning to the areas involving the Rent Administrator's and Rental Housing Commission's procedures (generally, and in this case) for preparing, maintaining and transmitting evidentiary hearing tapes and records, and to the occurrences in this case and past incidents where such hearing tapes were lost, damaged, or destroyed. This consent was not accepted by defendants, and plaintiff's counsel intends to oppose this Motion.

Plaintiff should be required, if it opposes this motion or insists on conducting all the depositions is has noticed, to explain why alternative discovery (e.g., interrogatories, or depositions of non-decision-makers only) would not fully develop the pertinent facts here.

A proposed Order is also submitted for the Court's consideration.

DATE: July 14, 2006          Respectfully submitted,

                              ROBERT J. SPAGNOLETTI
                              Attorney General for the District of Columbia

                              GEORGE C. VALENTINE
                              Deputy Attorney General
                              Civil Litigation Division

                                   /s/ Richard S. Love
                              RICHARD S. LOVE, D.C. Bar No. 340455
                              Chief, Equity I Section

                                   /s/ John D. Dodge
                              JOHN D. DODGE, D.C. Bar No. 451305
                              Assistant Attorney General
                              Office of the Attorney General
                              Equity 1 Section
                              441 Fourth Street, N.W., 6th Floor South
                              Washington, D.C. 20001
                              Telephone: (202) 724-6627
                              Facsimile: (202) 727-0431

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RITTENHOUSE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:06CV00545 |
| ) | (JR) |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
<u>MOTION FOR PROTECTIVE ORDER</u>

**Preliminary Statement**

At the June 1, 2006 hearing on the Defendants' Motion to Dismiss, this Court noted that: "The dismissal of the individual defendants on qualified immunity grounds has to be without prejudice; if there is any evidence developed in the course of this case that would support Plaintiff's claims that these misfeasances, malfeasances, nonfeasances, are deliberate and intentional rather than just being negligent.  I would expect the Plaintiff to pursue discovery of the agency, which I will permit, to determine how widespread this problem is, and I do not rule out the prospect that depositions of the same people who have been dismissed as parties might be taken for discovery purposes."  Transcript at 33.

On June 30, 2006, plaintiff served on defendants extensive Requests for Production of Documents and its First Set of Interrogatories, to which the defendants intend to provide responses to by July 31, 2006, pursuant to the Court's scheduling order.

In addition, in its Initial Disclosure Statement, and recently issued Notice of Depositions, Plaintiff intends to depose the following former or current District government

officials who are or have been responsible for adjudicating the underlying matter of plaintiff's Capital Improvement Petition, CI 20,755, at the administrative level:

> Ruth R. Banks (Chairperson, D.C. Rental Housing Commission),
> Ronald A. Young (Commissioner, D.C. Rental Housing Commission),
> Jennifer M. Long (prior Commissioner, D.C. Rental Housing Commission),
> Keith Anderson (Acting Rent Administrator of the District of Columbia),
> Christina Northern (former, Rent Administrator),
> Raenelle Zapata (former, Rent Administrator),
> Carl Bradford, (Hearing Examiner), and
> James Aldridge, (former, Rent Administrator).

Notwithstanding the extensive agency record requested by plaintiff and the considerable amount of documents already in its possession, plaintiff now seeks to depose the same government officials that are responsible for adjudicating plaintiff's Capital Improvement Petition, as well as several administrative employees. The defendants do not object to the deposition of administrative employees, but strongly objects to the taking of depositions of any government official that has been or is currently involved in the review and approval of the Capital Improvement Petition. Plaintiff's Capital Improvement Petition, CI 20,755, was remanded to the Rent Administrator by the Commission, and the Rental Administrator recently stayed the matter based on the consent motion of plaintiff and the Rittenhouse Tenants Association.

As argued more fully below, plaintiff's attempt to depose the decision-makers themselves is inappropriate and will likely violate the rules against *ex parte* communications and substantially intrude on the deliberative-process and/or judicial privilege. Allowing the deposition of these government officials would be tantamount to allowing a trial attorney to take the depositions of a trial judge and appellate judges on a case that is pending before them. For this and the other reasons discussed below, the District moves this Court for a Protective Order prohibiting the taking of the above-listed depositions on the grounds that allowing such depositions would impose a serious risk of violating the deliberative-process privilege, executive privilege, mental-process privilege, and

2

statutory rule prohibiting *ex parte* communications.

The defendants assert that other discovery, such as interrogatories, requests for production of documents, and affidavits and/or depositions of the administrative employees charged with preparing, transmitting, and maintaining cases records and hearing tapes, will provide adequate indication of a problem and, if so, "how widespread this problem is." Transcript at 33.

**Argument**

1.  <u>Deposing Government Officials Responsible for Adjudicating Matters Currently Under Review Runs the Risk of Violating Rules Against *Ex Parte* Communications.</u>

In its complaint, plaintiff alleges that the same government officials it now seeks to depose engaged in inappropriate *ex parte* communications with the opposing party in the underlying case involving plaintiff's Capital Improvement Petition. *See* Complaint ¶ 43. Now, plaintiff wants to use the power to this Court to engage in *ex parte* communications with those same officials through depositions. Allowing such depositions would be highly inappropriate, especially considering that local rent control regulations prohibit *ex parte* communication while a matter is pending before the Rental Housing Commission or Rent Administrator.

Specifically, D.C. Mun. Regs., tit. 14, §§ 3818 and 4002 prohibit the Rent Administrator and staff and the Rental Housing Commissioners and staff from engaging in *ex parte* communications.

> Oral or written communications regarding a petition or other contested issue pending disposition before the Rent Administrator or staff or RACD, for the benefit of one party only, and without notice to or contestation by the opposing party or any other person adversely interested, shall be considered *ex parte* communications. *Ex parte* communications shall include the following:
> (a) Communications relevant to the factual substance of a case between any interested party and the Rent Administrator, the hearing examiner assigned to the case or other staff of RACD;
> (b) Communications relevant to the qualifications of the hearing examiner before whom the proceeding is being heard, between any interested party and the Rent Administrator, the hearing examiner or other staff of RACD;

3

>    (c) Communications described in § 3818; or
>    (d) Communications regarding the evaluation of the merits of a party's claim or case, legal advice or advocacy either before or after the filing of a petition or other contested issue, between an interested party and the Rent Administrator or other staff of RACD.
>
> 4002.2 The provisions of § 4002.1 do not apply to any of the following oral or written communications:
>    (a) Those specifically authorized by law or this chapter to be made on an *ex parte* basis;
>    (b) Those related to a matter of form, format or procedure including the filling out of forms;
>    (c) Those made in the course of another proceeding of RACD to which the communication primarily relates, and which is on the public record; and
>    (d) Those between an interested party and a Contact Representative or other staff of RACD assigned the duty of providing information to the public regarding the provisions of the Act, regulations and the internal procedures of RACD and the Commission, and including referrals to agencies and sources of legal assistance and advocacy . . .

D.C. Mun. Regs., tit. 14, § 4002. Further, § 3818.1(b) makes the above applicable to the Rental Housing Commission and its staff, and further specifies, under § 3818.3, that "[t]he prohibition against *ex parte* communications shall run during the entire time a case is on appeal before the Commission."

Although defendants could not find any cases explaining the contours of the above rules prohibiting *ex parte* communications in the context of rental housing proceedings, there are many federal court cases that address the purpose and risks associated with improper *ex parte* communications. For example, in *Portland Audubon Soc'y v. Or. Lands Coalition*, 984 F.2d 1534 (9th Cir. 1993), the Court stated "The purpose of the *ex parte* communications prohibition is to ensure that 'agency decisions required to be made on a public record are not influenced by private, off-the-record communications from those personally interested in the outcome.'" In *Professional Air Traffic Controllers Organization v. Federal Labor Relations Authority*, 685 F.2d 547, 564 (D.C.

Cir. 1982), the Circuit addressed similar prohibitions against *ex parte* communications:

> [T]he Court must consider whether, as a result of improper *ex parte* communications, the agency's decisionmaking process was irrevocably tainted so as to make the ultimate judgment of the agency unfair, either to an innocent party or to the public interest that the agency was obliged to protect.

*Id.* at 565 (internal citations omitted).[2]

In order to avoid any possibility of violating the prohibition against *ex parte* communications during the deposition of agency officials in this case, defendants believe that other discovery would provide plaintiff with sufficient information to determine "if there is any evidence . . . [in] this case that would support Plaintiff's claims that these misfeasances, malfeasances, nonfeasances, are deliberate and intentional rather than just being negligent." Transcript of June 2006 hearing.

2.  Deposing Government Officials Responsible for Adjudicating Matters Under Review or that Have Been Decided Would Infringe on Their Executive and Judicial Privilege.

Allowing plaintiff to depose government officials responsible for adjudicating a decided or pending administrative matter would unnecessarily risk violating judicial and executive privileges.

Pursuant to Fed. R. Civ. P. 26(b)(1) a party "may obtain discovery regarding any matter, *not privileged*, that is relevant to the claim or defense of any party ... [or which] appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphasis added); *see also Flanagan v. Wyndham Int'l*, 231 F.R.D. 98, 103 (D.D.C. 2005).

It is well-established that, in the context of judicial review, probing into the mental processes

---

[2] *Compare, e.g., WKAT, Inc. v. FCC*, 296 F.2d 375, 383 (D.C. Cir.) (*ex parte* communications could amount to "corrupt tampering with the adjudicatory process"), *cert. denied*, 368 U.S. 841 (1961), with *United Air Lines v. CAB*, 309 F.2d 238, 241 (D.C. Cir. 1962) (nothing "savoring of corruption or attempt to corrupt"). If the *ex parte* contacts are of such severity that an agency decisionmaker should have disqualified himself, vacation of the agency decision and remand to an impartial tribunal is mandatory. *Cf. Cinderella Career & Finishing Schools v. FTC*, 425 F.2d 583, 591-92 (D.C. Cir. 1970) (failure of single member of agency to disqualify himself for bias requires vacation of agency decision).

of administrative decision-makers is inappropriate. *See In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency,* 156 F.3d 1279, 1280 (D.C. Cir. 1998) (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)). In *Morgan*, plaintiffs had challenged an order of the Secretary of Agriculture establishing stockyard rates; over objection, the trial court allowed plaintiffs to depose the Secretary regarding the conclusions reached in his order, the manner and extent of his study of the record, and his consultation with subordinates. On appeal, the Supreme Court ultimately ruled that the trial court had erred in allowing such discovery.

> The proceeding before the Secretary "has a quality resembling that of a judicial proceeding." Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that "it was not the function of the court to probe the mental processes of the Secretary." Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected. It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other.

*Morgan*, 313 U.S. at 422 (internal citations omitted).

The above-listed government decision-makers are entitled to the protection of the executive privilege. The most frequent form of executive privilege raised in the judicial arena is the deliberative-process privilege; it allows the government to withhold documents and other materials that would reveal "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd,* 384 F.2d 979 (D.C. Cir. 1967); *accord NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-53 (1975); *EPA v. Mink,* 410 U.S. 73, 86-93 (1973); *see also Wolfe v. HHS*, 839 F.2d 768, 773 (D.C. Cir. 1988) (*en banc*); *Jordan v. Department of Justice*, 591 F.2d 753, 772 (D.C. Cir. 1978) (*en banc*). Generally speaking, the deliberative-process privilege applies to all material reflecting the actual pre-decisional, mental, or deliberative

process--inter- and intra-governmental evaluations, expressions of opinion, and recommendations on policy and decision-making matters. *See e.g., Votehemp, Inc. v. DEA*, 2006 U.S. Dist. LEXIS 44801 (D.D.C. 2006).

The privilege include the protection of the mental processes of agency officials. S*ee United States v. Morgan*, 313 U.S. 409, 421-22 (1941). The deliberative-process privilege is a qualified privilege, however, and can be overcome by a sufficient showing of need. This need determination is to be made flexibly on a case-by-case, *ad hoc* basis. "Each time [the deliberative-process privilege] is asserted the district court must undertake a fresh balancing of the competing interests," taking into account factors such as "the relevance of the evidence," "the availability of other evidence," "the seriousness of the litigation," "the role of the government," and the "possibility of future timidity by government employees." *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992) (internal quotations omitted) (quoting *In re Franklin Nat'l Bank Securities Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979)).

As is the case with judicial immunity and executive privilege, the deliberations and mental processes of individual decisions-makers used to reach a particular decision in the underlying Capital Improvement Petition should not be intruded upon. Defendants presumed that plaintiff would restrict discovery to factual developments underlying defendants' allegations of "deliberate and intentional" or "negligent" losing of hearing tapes. *See* Transcript of June 1, 2006 hearing; Complaint ¶ 41. However, defendants are not confident that plaintiff shares the same understanding and is concerned that without a protective order, the depositions will result in -- at the very least -- many objections that will have to be resolved by the Court. In addition, without such a protective order, complex issues would have to be addressed concerning the appropriate notice and disclosure to the appellants (i.e., the tenants) in the underlying Capital Improvement Petition, in order not to run

7

afoul of the prohibition against *ex parte* communications.

## Conclusion

Accordingly, based on the foregoing, defendants submit that a protective order should be issued prohibiting plaintiff from conducting its noted oral depositions of the above-listed current or former District government officials, responsible for adjudicating plaintiff's Capital Improvement Petition at the administrative level.

DATE: July 13, 2006                Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/ Richard S. Love_____
RICHARD S. LOVE, D.C. Bar No. 340455
Chief, Equity I Section


_____/s/ John D. Dodge_____
JOHN D. DODGE, D.C. Bar No. 451305
Assistant Attorney General
Office of the Attorney General
Equity 1 Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6627
Facsimile: (202) 727-0431