UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RITTENHOUSE, LLC,<br>    Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, et al.,<br>    Defendants. | )<br>)  Civil Action No. 1:06CV00545<br>)             (JR)<br>)<br>)<br>)<br>) |

MEMORANDUM OF PLAINTIFF RITTENHOUSE, LLC IN
OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Plaintiff Rittenhouse, LLC, by undersigned counsel, herein opposes the July 14, 2006 Defendants' Motion for Protective Order. For the reasons stated, the Motion should be denied.

A.   Background

As discussed below, Plaintiff Rittenhouse, LLC has discovered evidence that over a 5 year period the rent control agency had to remand for de novo hearings approximately 30% of its cases, because the records had been lost or misplaced. Plaintiff desires to verify and explore this issue further by taking the depositions of the former and present Rent Administrators (Keith Anderson, James Aldridge, Raenelle Zapata (whose deposition was held on July 14, 2006, before the Motion was filed) and Christina Northern (whose deposition already is scheduled for July 21, 2006), as well as the former Hearing Examiner who last had the file in this case before the agency (Carl Bradford).  Plaintiff also has noticed the deposition of

1

the present and former Rental Housing Commissioners (Ruth R. Banks, Ronald A. Young and Jennifer M. Long). These are the government officials who would be most familiar with this loss of records.

The Defendants' Motion for Protective Order (the "Motion") seeks to block any inquiry by the Plaintiff of any of these government officials. The main contention of the Defendants is that these officials "are responsible for adjudicating and deciding the Capital Improvement Petition . . . ." Motion at 1. In large part this simply makes no sense, because Ruth R. Banks retired from the Rental Housing Commission as of June 30, 2006; Commissioner Jennifer M. Long left the Rental Housing Commission months ago, as the Defendants admitted in their Defendants' Rule 26(a)(1) Initial Disclosures, paragraph 11; Raenelle Zapata, the former Rental Administrator, left the employ of the government in December 2005; Christina Northern, another former Rent Administrator, has not been an employee of the government for several years. James Aldridge, whom the Defendants themselves described as the "former Rent Administrator" (Motion at 1), left that post years ago. These individuals therefore cannot in any sense be responsible for adjudicating or deciding the presently pending Capital Improvement Petition.

This leaves Commissioner Ronald A. Young of the Rental Housing Commission, Acting Rent Administrator Keith Anderson,

and Hearing Examiner Carl Bradford.  The Defendants' argument as to these individuals (indeed as to all of the above-named individuals, even though some of them are no longer in the government's employ) is that to allow the deposition of these individuals "could" run afoul of prohibitions on <u>ex parte</u> communications and intrude upon the deliberative-process privilege.  The Defendants' solution is to prohibit depositions of any of these present and former government officials.  The Defendants' Motion is lacking in merit and should be denied.  The depositions of all these present and former government officials should proceed.[1]

B.  <u>Argument</u>

At the June 1, 2006 argument on the Defendants' Motion to Dismiss, this Court noted that: "The dismissal of the individual defendants on qualified immunity grounds has to be without prejudice; if there is any evidence developed in the course of this case that would support Plaintiff's claims that these misfeasances, malfeasances, nonfeasances, are deliberate and intentional rather than just being negligent.  I would expect

---

[1]     As the Defendants note in their Motion, the Plaintiff agreed that it would consent "to a limited protective order that would restrict questioning to the areas involving the Rent Administrator's and the Rental Housing Commission's procedures (generally and in this case) for preparing, maintaining and transmitting evidentiary hearing tapes and records, and to the occurrences in this case and past incidents were such hearing tapes where lost, damaged or destroyed." Motion at 2.  The Defendants rejected this offer by the Plaintiff.

the Plaintiff to pursue discovery of the agency, which I will permit, to determine how widespread this problem is, and I do not rule out the prospect that depositions of the same people who have been dismissed as parties might be taken for discovery purposes. I imagine there will be squabble about that down the road, but we will just have to see how it plays out." Transcript at 33.

That dispute is now before the Court.

Since the June 1 argument, Plaintiff Rittenhouse, LLC has determined that there has been testimony before the Council of the District of Columbia that in rental housing cases "a review of [Rental Housing Commission decisions] over the last five years [approximately 1997 to 2002] indicates that about 30% of the OAD decisions have to be remanded for a de novo hearings because the OAD has lost or misplaced the records." (The OAD is the Office of Adjudication which heard rental housing cases, including the Capital Improvement Petition of Rittenhouse, LLC.) Council of the District of Columbia Committee on Consumer and Regulatory Affairs, Report on FY 2003 Budget Request of 2002, at page 50 (Brackets and emphasis added)(excerpt of which is attached hereto as Exhibit A).[2] This shocking statistic raises many questions. What happened? What, if anything, have the

---

[2] Former Rent Administrator Zapata testified at her July 14, 2006 deposition that this statistic appeared accurate to her (Transcript not yet available).

Rental Housing Commissioners and the Rent Administrator done to correct this situation (the lost record in the current case, and others reported in the Commission's compilation of decisions, would indicate very little)?[3] What was their level of awareness that 30% of case records were lost? If they did nothing to correct this situation, why not? These are but a few of the host of questions which are presented, and as to which only the Defendants have the answers. Plaintiff Rittenhouse, LLC should therefore be permitted to take their depositions.

1.  Depositions of Adjudicators

The Defendants erroneously assume that the proposed deponents, as administrators in an adjudication, are immune from depositions. This simply is not so. Even depositions of Judges are permitted. As the Court aptly summarized in Thompson v. Crawford, 656 F.Supp. 1183, 1184 (S.D. Fla. 1987), in a civil suit:

> "The remaining issue is whether the deposition of Judge Goderich is proper. Respondents argue that the purpose of the deposition is to delve into the Judge's mental processes and his opinions as to the legal authority regarding the judicial determinations he made on December 12, 1980. It is a firmly established rule that a judge may not be asked to testify about his mental

---

[3] Plaintiff has already taken the depositions of former Rent Administrator Zapata, and LaTonya Miles, clerk of the Rental Housing Commissioner, and so far as they knew nothing was done in response to this Council testimony. Ms. Miles testified that the Commission keeps no statistics of lost records. (Transcript not yet available).

5

> processes in reaching a judicial decision. <u>Washington v. Strickland, 693 F.2d 1243, 1262 (5th Cir. 1982)</u>. However, a court can properly consider the testimony of a judge regarding his personal knowledge of basic, historical facts relevant to the petitioner's claim. *Id*. Accordingly, this Court will not grant a protective order that completely prevents the deposition of Judge Goderich. However, the scope of inquiry shall be limited to permissible questions of basic, historical fact and shall not, under any circumstances, delve into the mental processes and reasoning of the Judge in making his decisions on December 12, 1980."

This standard is incorporated into the Plaintiff's proposed Order attached to this Opposition. <u>See</u> <u>also</u>, <u>Doe v. Yorkville Plaza Associates</u>, 1996 U.S.Dist. Lexis 18398 (S.D.N.Y. 1996); <u>Moix-McNutt v. Brown</u>, 45 S.W. 2d 384 (Ark. 2001); <u>Mars v. State</u>, 252 So.2d 652 (Ala. 1971).

2. <u>Ex Parte Communications</u>

With respect to <u>ex</u> <u>parte</u> communications, the applicable Regulations clearly provide that, to be considered <u>ex</u> <u>parte</u>, the communication has to be to "a Commissioner or any member of the Commission staff" (with respect to the Rental Housing Commission) or to the "Rent Administrator or staff" with respect to the Rent Administrator. 14 DCMR § 3818.1 and 14 DCMR § 4002.1. As stated above, Ruth Banks and Jennifer Long have both left the Rental Housing Commission. Raenelle Zapata and Christina Northern have long since left the office of the Rent

6

Administrator. James Aldridge is listed in the Defendants' Motion as "former Rent Administrator", as indeed he is, several years having elapsed since he left that post. None of these individuals could possibly be considered the Commission, the Rent Administrator, or their staffs, nor could they be responsible for adjudicating or deciding the Capital Improvement Petition in the future.

The Defendants' ex parte communications argument is also fallacious as to Commissioner Ronald A. Young and Acting Rent Administrator Anderson and Hearing Examiner Carl Bradford. The very Regulations which the Defendants cite in their Memorandum undermine their argument. As to the Commission, an ex parte communication only occurs if "reasonable prior notice to all parties has not been given" (14 DCMR § 3818.1), so the simple solution here is, at most, to give notice to the tenants of the scheduled depositions in question. The same rule applies to the Regulations before the Rent Administrator (14 DCMR § 4002.1, prohibiting certain communications "without notice to or contestation by the opposing party or any other person adversely interested . . ."). Again, the solution is, at most, to give notice to the tenants.[4]

---

[4] Of course, any ex parte communication must go to the merits of the case. The action before this Court involves the loss of records, not the substantive issues involved in the Capital Improvement Petition.

Moreover, these proposed depositions are not <u>ex parte</u> communications at all. The Rent Administrator's Regulations, § 4002.2(c) expressly provide that the <u>ex parte</u> communication Regulations:

> "do not apply to any of the following oral or written communications:
>
> * * *
>
> (c) Those made in the course of another proceeding of RACD to which the communication primarily relates, and which is on the public record . . . ."

Thus, communicating on the record with a decisionmaker in "another proceeding of RACD" is not an <u>ex parte</u> communication at all. Surely, the same rule applies to another proceeding before the United States District Court, which is what this case is. The Commission has an identical rule providing that communications in another proceeding of the Commission are not <u>ex parte</u> communications. 14 DCMR § 3818.2(c). Indeed, the Defendants cite these Regulations in their Memorandum on this Motion. Memorandum at 4.

Without the slightest bit of support, the Defendants assert that other discovery, such as interrogatories, requests for production of documents and affidavits might suffice, and they demand that the Plaintiff show that is not so. Memorandum at 3. The Defendants, as the party seeking a protective order to prevent discovery of evidence relevant on its face, have that

8

burden, however, not the Plaintiff. <u>DirecTV, Inc. v. Puccinelli</u>, 224 F.R.D. 677 (D.C. Kan. 2004) It also is well known that depositions upon oral examination are the most effective tool for discovering the knowledge of a witness. Interrogatories, requests for production of documents and affidavits are a poor substitute, which in large part are frequently written and edited by counsel, and in any event have the drawback of not permitting a follow-up inquiry immediately, as does a deposition upon oral examination. 8A Wright, Miller & Marcus, <u>Federal Practice and Procedure</u>, § 2163 at 219 (1994 ed.). In short, the alternative means of discovery offered up by the Defendants are not a substitute for depositions upon oral examination. The Supreme Court has recognized that in Civil Rights cases a focused deposition of a government official before other discovery is permissible. <u>Crawford-El v. Britton</u>, 523 U.S. 574, 599 (1998).

   3. <u>Privilege</u>

We start with the unsurprising proposition that: "The discovery rules apply to the United States - and to states and other governmental subdivisions and bodies - just as fully as they apply to any other person." Volume 8 Wright, Miller, and Marcus, <u>Federal Practice and Procedure</u>, Section 2019 at 296-297

(1994 Edition), citing United States v. Procter & Gamble Co., 356 U.S. 677, 681 (1958) and numerous other cases.

The so-called "deliberative process privilege" is clearly inapplicable. When there is any reason to believe that government misconduct has occurred, the Court of Appeals has made clear that the deliberative process privilege disappears altogether. In Re Sealed Case, 121 F.3d 729, 746 (D.C. Cir. 1997); In Re Subpoena Duces Tecum served on the Office of the Comptroller of the Currency, 145 F.3d 1422, 1424 (D.C. Cir. 1998). See also Waters v. U.S. Capitol Police Board, 216 F.R.D. 153 (D.D.C. 2003); Dominion Cogen D.C., Inc. v. The District of Columbia, 878 F.Supp. 258, 268 (D.D.C. 1995). No "balancing test" is applicable. In Re Subpoena Duces Tecum, supra, 145 F.3d at 1425. The party seeking discovery must provide an adequate factual basis for believing that the requested discovery would shed light upon the government misconduct. Judicial Watch of Florida v. Department of Justice, 102 F.Supp.2d 6, 15-16 (D.D.C. 2000). Plaintiff Rittenhouse, LLC submits that the Council Report quoted above, as well as the other facts alleged in the Complaint and discussed at the June 1, 2006 oral argument (and in the Transcript of that hearing), indicate strongly that the requested discovery would shed light upon government misconduct, either by acting or failing to act

in the face of the loss of records in numerous cases before the agency.

The so-called "deliberative process privilege" also does not apply where, as here, a plaintiff's cause of action turns on the government's intent. In such cases, the privilege is not properly asserted. Wade v. Washington Metropolitan Area Transit Authority, 2006 U.S.Dist. LEXIS 16447 (D.D.C. 2006).

The so-called "confidential self-analysis and self criticism privilege" also does not apply. That qualified privilege has been found applicable only in limited cases involving areas of public health or public safety. First Eastern Corporation v. Mainwaring, 21 F.3d 465, 467, footnote 1 (D.C. Cir. 1994). Those areas are not involved here.

We also note that purely factual information is excluded from any of these privileges. First Eastern Corporation, supra, 21 F.3d at 468, footnote 5.

In any event, even where no misconduct by the government is alleged, none of these privileges is absolute and, according to First Eastern Corporation, supra, if any privilege is applicable at all, this Court must consider: (1) the relevance of the evidence sought to be protected. In this case, the testimony sought goes to the heart of the case which seeks to show that the Defendants violated the Civil Rights of the Plaintiff by deliberate and repeated disregard of the law; (2) the

availability of other evidence. In this case, what the proposed deponents knew and what they did is best known to them and is not available elsewhere (Ms. Miles, testified that she did not know what was done in response to the Council Report); (3) the "seriousness" of the litigation and the issues involved. This is a Civil Rights case alleging that the Defendants are repeatedly violating the Civil Rights of the Plaintiff and other housing providers by repeatedly losing records on appeal in the cases that come before them; (4) the role of the government in the litigation. In this case, all Defendants are government entities and the proposed deponents are present or former government personnel; and (5) the possibility of future timidity by government employees if they will be forced to recognize that their secrets are violable. Plaintiff Rittenhouse, LLC submits that disclosure of the failure to correct an obvious and very serious fault like this one will not motivate the government employees to be "timid" but rather to take prompt action to correct the situation.

C.  Conclusion

For these reasons, the Court should rule that these depositions should be permitted to proceed. A proposed Order is attached to this Opposition.

GREENSTEIN DELORME & LUCHS, P.C.

/s/ Vincent Mark J. Policy
--------------------------
Vincent Mark J. Policy #204701
Richard W. Luchs #243931
M. Ryan Jenness #479076
1620 L Street, N.W. #900
Washington, D.C. 20036
Tel: (202) 452-1400
Facsimile: (202) 452-1410
Email: vmp@gdllaw.com

Counsel for Plaintiff Rittenhouse, LLC

**FILED:**   July 18, 2006

293400v1