UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RITTENHOUSE, LLC, )<br>)<br>Plaintiff, )<br>)<br>)<br>)<br>DISTRICT OF COLUMBIA, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:06CV00545<br>(JR) |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

Pursuant to LCvR 7(d) and Fed. R. Civ. P. 6(a), defendants (collectively, "the District") hereby reply to plaintiff's Opposition to Defendants' Motion for a Protective Order.

In regard to the government officials no longer responsible for resolving the underlying Capital Improvement Petition, defendants have already participated in three depositions,[1] and are willing to proceed with the depositions of officials no longer or not responsible for resolving the underlying matter.

However, with regard to the four noticed government officials that are still employed by the District and are, or may be, responsible for adjudicating the underlying Capital Improvement Petition,[2] defendants continue to object to these depositions as being unwarranted during the

---

[1] Plaintiff has already deposed Ms. LaTonya Miles (currently employed by the Rental Housing Commission as Contact Representative/Administrative Assistant), Raenelle Zapata (former Rent Administrator), and Christina Northern (former Rent Administrator).

[2] This officials are: Ronald A. Young (Commissioner, Rental Housing Commission), Jennifer M. Long (former Commissioner, Rental Housing Commission, but now Administrative Law Judge with D.C. Office of Administrative Hearing), Keith Anderson (Acting Rent Administrator of the District of Columbia), Carl Bradford, (Hearing Examiner). It is noted that Commissioner Ruth R. Banks, Chairperson, Rental Housing Commission, retired on June 30, 2006.

pendency of the underlying matter. Plaintiff has failed to meet the relevant legal standard that would justify these depositions and granting leave to do so could set a dangerous precedent even where plaintiff agreed not to delve into the mental processes and reasons behind the decisions.

## Brief Argument

Defendants will spare the Court any argument that was already stated in the Motion for a Protective Order, in regard to prohibiting the plaintiff from delving into the mental processes of government decision-makers, as plaintiff implicitly concedes this issue in its Opposition for a Protective Order ("Opp."). As a result, defendants are willing to proceed with the depositions for the government officials no longer employed by the District or no longer responsible for adjudicating the underlying matter.

However, as to Commissioner Young, Commissioner Long, Rent Administrator Anderson, and the Hearing Examiner Bradford, these government officials are still responsible for adjudicating the underlying Capital Improvement Petition.[3] As to these officials individually, and as a group, the plaintiff failed in its Opposition to justify taking their depositions by demonstrating a "*strong showing of bad faith or improper behavior*." *Cobell v. Norton*, 237 F. Supp. 2d 71, 100 (D.D.C. 2003) (citations omitted) (emphasis added).

In its Opposition, plaintiff did not cite a single case where a party was allowed to depose a judge while that party had a case pending before that judge. Even in cases where parties have filed motions to recuse a sitting judge or one of his court officials, the courts have not allowed parties to depose such officials. *Id.* at 101. Defendants assert that plaintiff's claims in this case are vary similar to a motion to recuse a sitting court official while a case is pending before them.

---

[3] Commissioner Jennifer Long recently accepted a position as an Administrative Law Judge with the D.C. Office of Administrative hearing in preparation of the October 2006 transfer of rent control matters to that office.

Specifically, plaintiff here has asserted in its Complaint that <u>all</u> government officials responsible for adjudicating its Capital Improvement Petition at the administrative level are biased or impartial against the plaintiff and landlords in general because they intentionally and deliberately lose hearing tapes with the purpose of depriving plaintiff of its due process rights. Complaint ¶ 39. These claims, just as allegations made in support of a motion to recuse a sitting judge, are serious charges with, potentially, far-reaching repercussions. Accordingly, defendants believe this Court should use the federal cases addressing motions to recuse a sitting court official when evaluating this motion for a protective order.

The Court in *Cobell*, 237 F. Supp. 2d at 100, held that "[o]ral examination of a judicial or quasi-judicial officer as to matters within the scope of his adjudicative duties should be permitted only upon a *strong showing of bad faith or improper behavior.*" The Court went on to state:

> Movants have not cited any case or statute in support of their request, and this Court knows of no case in which a court has authorized discovery to be taken upon judicial officers. On the other hand, courts that have considered the issue have refused to permit discovery to be taken upon special masters. *See, e.g., Gary W. v. State of Louisiana Dep't of Health & Human Servs.*, 861 F.2d 1366 (5th Cir. 1988) (affirming decision to quash subpoena and notice of deposition upon special master); *McCoy v. Belmont*, 1999 U.S. Dist. LEXIS 21815, 1999 WL 33117446 (D. Conn. 1999) (refusing to permit discovery upon special master).

Id. at 102.

There are strong policy reasons behind the high standard that a party must make a "*strong showing of bad faith or improper behavior*" before a party is allow to depose a sitting judicial official – which the plaintiff has not, and cannot reach. Those concerns were described by the court in *Cheeves v. Southern Clays*, 797 F. Supp. 1570, 1583 (D. Ga. 1992) when it stated:

> [S]ound policy considerations speak out loudly against compulsory discovery from the presiding judge. Embroiling the presiding judge in the adversarial processes of any case is not only unseemly, it is calculated to give rise at the least to a resulting appearance of bias against the aggressor litigant although, as previously noted, that species of boot strap bias cannot be recognized, as a matter of law, as a disqualifying circumstance. To do so would simply invite manipulated harassment by any lawyer unscrupulous enough to willingly embark on a course of conduct designed to disqualify an otherwise impartial judge whose views are thought to be adverse to the interests of the client. Such a tactic would, at worst, cause an unjustified voluntary disqualification of the presiding judge or, at least, cause endless delay in the litigation while those maneuvers are in process.

*Id.* In *Cheeves,* plaintiffs served three federal district judges with notices to take depositions and subpoenas *duces tecum* in connection with a motion to disqualify the presiding judge. The disqualification motion was based upon alleged communications between the presiding judge and the other two judges. *Id*. at 1574-75. A fourth judge granted the three judges' motions to quash the notices of deposition and subpoenas. The court commenced its opinion by asserting that:

> [B]roadly stated, the issue to be determined is whether, and under what circumstances, if any, a judicial officer may be compelled to personally submit to discovery inquiries in aid of a motion to disqualify one of such officers from proceeding further in a case over which he or she is presiding.

*Id.* at 1573.

The court refused to permit plaintiffs to take discovery from the three judges. It held that "compulsory discovery process addressed to the presiding judge in aid of a motion to disqualify that judge pursuant to 28 U.S.C. §§ 144 and 455(a) is not available to a litigant upon initial presentation of the motion or the request for such discovery in the district court." *Id.* at 1583.

The *Cobell* Court had similar concerns when it stated:

> This Court has similar suspicions about movants' demands to depose the Master and Monitor, given that a court which decides to permit one of its judicial officials to be deposed creates a serious risk that its decision will mandate its own recusal. *See, e.g., Kennedy v. Great Atlantic & Pacific Tea Co.*, 551 F.2d 593, 598-99 (5th Cir. 1977) (finding that the decision of a district judge to permit his

>law clerk to testify at trial constituted reversible error); *Terrazas v. Slagle*, 142 F.R.D. 136, 139 (W.D. Tex. 1992) (refusing to permit defendants to depose the presiding judge's law clerks because "the mere taking of the depositions of the law clerks will have the legal effect of disqualifying the employing judges"); *United States v. Ferguson*, 550 F. Supp. 1256 (S.D.N.Y. 1982) (granting motion to recuse district judge because his former law clerk had testified before the grand jury). Therefore, for this Court to set a precedent by authorizing the deposition of the special masters would allow parties to any complex litigation requiring the use of special masters to achieve indirectly what they would be unable to achieve directly - namely, the recusal of the presiding judge. This the Court refuses to do.

Id. at 101.

These policy concerns and the dangerous precedent that would be established by allowing depositions of presiding officials, even where, as here, plaintiff does not seek to delve into their mental processes and reasoning for their decisions, support granting a protective order here.

In its Opposition, plaintiff does not even come close to making a "strong showing" that even one, let alone <u>all</u> four of the remaining decision-makers it seeks to depose (that are responsible for adjudicating the underlying Capital Improvement Petition) have individually or have <u>all</u> engaged in "bad faith or improper behavior." In fact, all the plaintiff has been able to show so far is that: (1) the hearing tapes were lost in its underlying case,[4] (2) two disgruntled individuals that testified before the Council of the District of Columbia in 2002 alleged that 30% of the tapes were lost the by the Office of Adjudication in the five years prior to 2002,[5] and (3) the three individuals deposed so far in this case agreed with plaintiff that the Office of Adjudication had a problem with losing tapes in the past.[6]

---

[4] *See e.g.,* Complaint; Defendants' Motion to Dismiss.
[5] Plaintiff's Opposition to Defendants' Motion for Protective Order p. 4.
[6] During their depositions of July 14th, and July 21st, respectively, both former Rent Administrators Zapata and Northern testified that they were aware of the problems with the

First, the current Rent Administrator, Mr. Anderson, was not even employed by the District in 2002,[7] so the unsubstantiated testimony provided to the City Council in 2002 is irrelevant to any contention that Mr. Anderson had anything to do with such lost tapes for that period. Second, the same unsubstantiated testimony that alleges 30% of the tapes were lost during that period, relates to hearings conducted by the Office of Adjudications, and not to the Rental Housing Commission. Thus, these allegations, even if they were true, which the defendants dispute, cannot be attributed to the individual Commissioners who have no supervisory control or responsibility over the Office of Adjudications, or its equivalent, now or during that period.

Surely, if the plaintiff had *"strong [evidence] of bad faith or improper behavior"* it would have already revealed that evidence by now, and especially for this Motion.

Plaintiff has failed to provide the appropriate level of legal and factual justification of "bad faith or improper behavior" to support taking these officials' depositions, and it also has failed to adequately support why alternative discovery (e.g., interrogatories, or depositions of non-decision-makers only) would not fully develop the pertinent facts here.

Defendants have cooperated with plaintiff in deposing three government officials, two of which are no long with the government but requested representation by the District. However, for the legal and policy reasons stated above, the District strongly objects to the depositions of the remaining decision-makers responsible for adjudicating the underlying Capital Improvement Petition.

---

Office of Adjudication losing hearing tapes and that they both implemented procedures to correct the problem. (Transcripts not available).

[7] Mr. Anderson was first employed by the Rental Accommodations and Conversion Division in June 2003.

For the above-stated reasons and those advanced in defendants' Motion for a Protective Order, the District again respectfully requests that this Honorable Court enter a Protective Order prohibiting the plaintiff from deposing Commissioner Young, Commissioner Long, Rental Administrator Anderson, and Hearing Examiner Bradford.

        Respectfully submitted,

        ROBERT J. SPAGNOLETTI
        Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division


        /s/ Richard S. Love
        RICHARD S. LOVE, D.C. Bar No. 340455
        Chief, Equity I Section


        /s/ John D. Dodge
        JOHN D. DODGE, D.C. Bar No. 451305
        Assistant Attorney General
        Office of the Attorney General
        Equity 1 Section
        441 Fourth Street, N.W., 6th Floor South
        Washington, D.C. 20001
        Telephone: (202) 724-6627
        Facsimile: (202) 727-0431